EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HARRY'S INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ARTHUR MOGILEFSKY

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**

IAN 27 2017

SAN LUIS OBISPO SUPERIOR COURT

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>1050 Monterey Street<br>San Luis Obispo, California 93408 | SUPERIOR COURT OF CA<br>County of San Luis Obispo<br>Courthouse Annex<br>1035 Palm St., Rm. 385<br>San Luis Obispo, CA 93408 | CASE NUMBER:<br>*(Número del Caso):*<br>17CV0047 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Arthur Mogilefsky 878 Mesa Drive  Arroyo Grande, California 93420 805-904-6164

| DATE: JAN 2 7 2017<br>*(Fecha)* | Clerk, by<br>*(Secretario)* D. RINCON | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☑ on behalf of *(specify)*: Harry's INC
   under: ☑ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify)*:
4. ☐ by personal delivery on (date): 2/27/17

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

ARTHUR MOGILEFSKY
878 Mesa Drive
Telephone: (805) 904-6164
Fax: (805) 904-6164
Email: mogel@charter.net

Pro Se

**FILED**

JAN 27 2017

SAN LUIS OBISPO SUPERIOR COURT
BY _____

SUPERIOR COURT OF CALIFORNIA

SAN LUIS OBISPO COUNTY

UNLIMITED CIVIL ACTION

| | |
|---|---|
| Arthur Mogilefsky<br><br>        Plaintiff,<br><br>vs.<br><br>Harry's Inc.,<br>a Delaware Corporation, Does 1-5<br><br>        Defendant. | Case No.: 17CV0047<br><br>Breach of Contract<br>Breach of Implied Covenant of Good Faith and Fair Dealings.<br>Strict Products Liability<br>Intentional Misrepresentation<br>Intentional Infliction of Emotional Distress<br>Fraud<br>Concealment<br>Battery California Penal Code Section 242<br>Violation California Consumer Legal Remedies Act.<br>Violation California Unfair Competition Act<br>Violation of California False Advertising Act.<br>Violation of the Fair Trade Commission Act<br><br><br>JURY TRIAL DEMANDED<br><br>AMOUNT DEMANDED<br>EXCEEDS $ 25,000 |

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction

1

## NATURE OF THE ACTION

1.   Defendant Harry's Inc., is engaged in the manufacture and sale of cartridge razors, and shaving accessories since April of 2013. They sell their razors on their website at Harrys.com, Target stores, J. Crew stores, Barney's stores and Nordstrom stores. Defendant also sell its razors in Canada, and ships its razors to  United States military facilities worldwide. The Defendant offers a "shave club" on it's website, in which razors are shipped to customers at an agreed upon frequency.

2.   Cartridge, or disposable razors, were invented in the early 1900's and are popular because they are capable of shaving most any part of the body without risk of significant nicks or cuts.

3.   The Defendant's razor is composed of five evenly spaced "German engineered" blades that attach to a plastic or aluminum handle, (made in China), in such a manner as to be able to be unattached when worn, and substituted with a new cartridge. Defendant seeks to position itself as a low cost alternative to a market dominated by Proctor and Gamble's Gillette Company.

4.   The Defendant claims it looked all over the world to find a place to make its razors. They found, and purchased for 100 million dollars, a 100 year old razor factory in Germany to manufacture their razors.

5.   Defendant uses psychological marketing techniques such as; designer packaging, stunning graphics, story boarding, rewards programs, eye catching social media presentations, catchy narratives, custom engraving, making customers "feel special", and their "commitment" to their customers. They refer to this process as "cool branding". Their goal is, "**to get people to want our razors to be part of their lives**" and to have their customers "**rethink the sink**". The "cool branding has garnered them a cult like following of two million or more customers.

6.   Defendant makes no claim or comparison showing that its razor is superior in performance to its competitors. The Defendant provides no evidence that it tested its razors for safety.

7.   The Plaintiff, while saving his head with a razor manufactured by the Defendant sustained an injury to his scalp. The Defendant failed to warn the Plaintiff that their razors caused scalp injuries.

8.   Defendant knew at all times referenced herein that if it warned customers that the razors gouged scalps and caused lacerations to the head, the razor would become "suspect" and Defendant would be unable to compete with other razor manufacturers whose products shaved heads and other parts of the body without inflicting injuries. Therefore, head shavers would have

to be sacrificed and the injuries they sustained would have to be concealed. The Defendant paid 100 million dollars for a factory that could not produce a safe razor.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this matter with the Plaintiff being a resident of State and County. The contract between Plaintiff and Defendant was entered into in this State and County. The obligation or liability of Defendant arose in this State and County, and the Defendants breach of contract occurred in this State and County. Defendant sells its products in this State and County in retail stores and on the Internet at its website Harrys.com. This is a unlimited civil action the amount demanded exceeds $25  ,000.

## PARTIES

10.    The Plaintiff is a natural person and resident of the State of California.

11.    Defendant is a Delaware corporation.

12.    The true names and capacities whether individual, corporate, associate or otherwise, of the Defendants named in this action as Does 1-5, inclusive, are unknown to Plaintiff, which therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to show their true names and capacities when they have been ascertained. Plaintiff is informed and believes, and herein alleges, that each of these fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and the Plaintiff's injuries as herein alleged were proximately caused by the conduct of these fictitiously named Defendants.

## STATEMENT OF FACTS

13.    On or about July 10, 2016, the Plaintiff viewed an ad for Defendant's razors on his Facebook news feed. The Defendant was offering a razor trial at their cost for shipping. Plaintiff had seen the Defendant's ad in his newsfeed several times previously and decided to purchase the Defendants razor.

14.    Plaintiff clicked on the ad and was taken to a checkout page where the Plaintiff entered the appropriate shipping information and paid for the razor. The razor arrived at the Plaintiff's residence a week later in a cardboard box containing the razor and a 2 ounce bottle of shave gel.

15.    The Plaintiff first used the Defendant's razor to shave his head on July 19, 2016.

16.    Prior to shaving his head, which sported a stubble of hair, the Plaintiff applied hot water to his scalp and the shaving gel supplied by the Defendant. Plaintiff  made two passes of his scalp with the razor. Blood began to profusely pour from his head, running down his face and

onto his undershirt. Plaintiff looked at the razor and saw a piece of his scalp the size of a dime stuck in the razors blades. The wound bled for an hour and was extremely painful. The gouged scalp remained painful for five days and made sleeping difficult.

17.    A subsequent medical report and biopsy performed by a dermatologist showed a "divot" in Plaintiff's head and permanent scarring.

18.    A recent study conducted by the "Social Psychological and Personality Science Journal" concluded that men who shaved their heads were perceived as being more masculine, taller and physically stronger than men who did not shave their heads. These finding were consistent with three studies conducted by the Wharton School of Business at the University of Pennsylvania.

19.    One possibility for this phenomenon is that shaved heads are associated with stereotypically masculine professions: the military, police, firefighting and professional athletics. Another theory is that Hollywood has had an effect on society's view of bald men. Movie actors; Bruce Willis, Dwayne "The Rock" Johnson, Vin Diesel, Jason Statham, and others are popular action movie heroes with shaved heads.

20.    Defendant relied on the psychological makeup of the customers most likely to be injured by their razors as the primary means of concealing its dangers. Defendant knew that head shavers, because of their personality traits were unlikely to complain of injuries sustained to their heads because they were "tough" and not complainers.

21.    Defendants knew that this "macho group" was likely to suffer in silence. This gave the Defendant a "free ride" to inflict head injuries on this class of customers with little fear of public exposure. They also knew that victims were unlikely to file actions against them in court because the damages were relatively small and attorneys would be unavailable. Small claims cases were unlikely because victims did not document their damages with medical treatment. Defendant also disclaimed liability for damages and included mandatory arbitration in their "Terms of Service" on their website.

22.    Head shaving has also become popular among men with male pattern baldness. Instead of looking as if they are balding they shave their heads.

23.    Head shavers that did complain about injuries were discouraged from making claims for damages by Harry's customer service employees, lead by Katie Rogers, the "Head Of Customer Experience". Rogers trained and supervised a staff of customer service representatives in techniques to discourage customers from asserting claims. The customer service representatives

would tell the claimants how sorry they were to hear about their injuries and relate that this was something Harry's took very seriously. They offered to refund the purchase price.

24.   If the first attempt to discourage a claim was unsuccessful the complaint would be elevated to the next level of customer service representative who would make further apologies and assure the prospective claimant that Harry's was very concerned about safety. At all times these customer service representatives knew the razors were defective and that the Defendant was responsible for the injuries to customers.

25.   When a customer was not discouraged from pursuing a claim by "sweet talk" they would be handed off to Kerri Cavanaugh a claims adjuster for Zurich Insurance USA., the Defendant's liability carrier.

26.   Cavanaugh, who Rogers refers to as "our insurance partner" worked closely with Rodgers, and at all times knew the razors caused scalp injuries. She conspired with the Defendant to make the claims process as difficult as possible, illegally denying claims in order to keep the dangers of the razor from surfacing.

27.   The same day Plaintiff's scalp was filleted by the Defendant's razor, he contacted Defendant's customer service representative via email to report the injury. "Alisha", Defendant's employee sent an email to Plaintiff on July 20, 2016, that email reads:

> "Thank you so much for reaching out. I'm part of our Customer
> Experience Leadership team and I'm sorry that this has happened-
> the last thing we would ever want for our customers is an experience
> like this. We take safety and quality control incredibly seriously, and
> when a customer has a poor experience our procedure is to provide as
> much information as possible to our product team. Any details you can
> provide about you shaving technique and circumstances around what
> happened would be really helpful. I'm sorry that this happened. I would
> be more than happy to refund you for your order it you would like. Please
> let me know if there is anything else at all that I can do for you.
>
> Any refund or product replacement is provided solely as a customer
> accommodation. Customer accommodations and related communications
> are not an admission by Defendant of any wrong doing, negligence or
> liability". (emphasis added)

28.   The Defendant was exculpating itself from liability in their initial email contact, while making no reference to the injury. They knew at the time that the shaving technique had nothing

to do with the injuries sustained by the Plaintiff and were aware of numerous prior claims from head shavers.

29.   On July 22, 2016 "Karen", another employee of the Defendant wrote:

> "My name is "Karen" and I'm the <u>Head of the Trust and Safety</u> at Harry's. I work with "Alisha" and she let me know about your experience. I'm so sorry to hear what happened--we're going to do everything we can to resolve the issue. I'm going to have a Harry's partner reach out to you in the next 2-3 business days to discuss what happened. They'll work diligently between us to determine the next steps and make sure that we can take care of you better, and that we reach the right resolution. In the meantime, I've refunded you for your original order. Thank you so much for your patience, and let me know if there's anything I can do in the meantime.

30.   Neither of these employees state that the razor was not designed to be used for head shaving, nor do they mention that an injury occurred, they were finely scripted.

31.   On July 23, 2016, Plaintiff emailed Defendant's employee "Karen" that the pain from the head wound had not subsided and that he was revoking a previous offer to settle his claim for $500.00. Plaintiff informed Karen that he believed the razor was defective, and that the defect was intentionally concealed from him.

32.   On July 27, 2016, the Plaintiff received a phone call from Cavanaugh, (the insurance adjuster), during that conversation Cavanaugh told the Plaintiff that he would need to send the razor that he claimed caused the injury to her, so she could send it to Defendant's factory in Germany to be examined by their engineers. Plaintiff refused Cavanaugh's request suspecting that it was a ploy to destroy the instrumentality that caused the injury in order to defeat the Plaintiff's claim.

33.   When the Plaintiff refused to send the razor to Cavanaugh she said there was a second option. The second option was to send her photos of the razor. Cavanaugh emailed the Plaintiff three photos of the Defendant's razor taken from different angles. She wanted the Plaintiff to take pictures of the razor that injured him and replicated the examples she sent. She said this was part of the claims process.

34.   Cavanaugh knew at all times that the razor was defective for failure to warn, something that could not be shown in a photograph. She was furthering the conspiracy with the Defendants to conceal the defect. Defendant had several email exchanges with Cavanaugh, who continued to

assert that there was nothing wrong with the razor and that it was up to the Plaintiff to prove there was something wrong with the it.

35.   The Plaintiff decided to investigate further in order to find the proof Cavanaugh wanted. Plaintiff went to Defendant's website for the first time and found a "Help Page" with fifty-five drop down questions and answers. Buried among the fifty-five, and about halfway down the list was an entry that stated:

> "Our razors are designed to shave your face, not your head. We're
> working on developing products for head shaving but  in the meantime,
> we recommend that you only use Harry's blades for the purpose
> they we designed for, to shave your face. If you have any questions at
> all, please call or email, we'd love to discuss them with you."

36.   Nowhere on that page, nor anywhere else on Defendant's website, was there a statement that using the Defendant's product would cause scalp lacerations. The Plaintiff then looked for others that might have had an experience similar to his. Below are comments from purchasers of Defendant's razors reported on the designated websites:

37.   **CatholicGentleman.com**:

  a.   <u>Daniel Couglin</u>:  April 5, 2015 " Michael, I'm glad you posted
       this. I too was injured by a Harry's blade. In my 35 years
       of shaving, I have never even gotten close to the severity
       of the injury I received by this faulty blade. I will live with
       a scar for rest of life."

  b.   <u>Michael McFarland</u>:  December 29, 2014 "...gouged
       myself."

  c.   <u>Rich Fox:</u>  January 4, 2015 **"....** cut badly, twice."

  d.   <u>Ricky Ward:</u>  January 9, 2015 "...personally think
       their dangerous."

  e.   **"<u>John C</u>"**:  February 15, 2015 "...pulled hurt."

  f.   "<u>Jim</u>":  February 23, 2015 "...head, two major cuts."

  g.   "<u>Joe</u>":  April 1, 2015 "....medical bandage to stop bleeding."

  h.   <u>Anonymous</u>: April 8, 2015 "Hi Dan and Michael
       (and "Jim" and "Joe").  I also have been cut badly by Harry's
       blades. I'm a head-shaver and got flayed terribly two times in two
       months. The first I thought was a fluke, and I really wanted

wanted to like Harry's, so I tried again. I had a few good, uneventful weeks, but 2-3 days ago, I had the second "event".

In both instances, a significant piece of my scalp was flayed off. Huge mess. Bathroom looked like a crime scene. Ouch. I've got pictures but you don't want to see them. I've been shaving my head for over 10 years with a wide range of cartridge razors, and I've never had anything even remotely this awful happen before. Hearing some of your comments, paired with my experience, it sounds like they have a major design or production problem."

i.   "Michael" (undated):  "I'm glad you posted this I too was injured by a Harry's blade. In my 35 years of shaving, I have never even gotten close to the severity of the injury I received from this faulty blade. I will live with a scar for the rest of my life."

j.   Unidentified: (undated) "I too have had a large piece of scalp flayed, 2 spots, last time I shaved, using harry's razor and their gel. I've been ok on my face but I am now a bit weary. Have heard nothing from their customer service dept. yet."

k.   Unidentified: (undated) "BALD MEN BEWARE: Except for a brief time with headblade, I have used a fusion for 10 years on my face and head. I tried Harry's recently and loved the packaging and blade handle. However, the razor was lacking. On my face, with an admittedly heavy beard, the razor left a more quickly 5 o'clock shadow. On my head, which is by no means populated by thick hair.

Harry's was a complete disaster. If you shave your head, avoid this blade. In three times, I had two major cuts. I thought the first one may have been my in attention. On the second try, I got a worse cut that literally required a medical bandage to stop the bleeding. Harry's in not meant to shave your head."

l.   Dave Tupper:  May 26, 2015 "...hurt."

m.   Mango Keswani:  June 7, 2015 "..scar."

n.    <u>B. Douglas Simon:</u> June 8, 2016  "....worst cut."

o.    "<u>Loyd</u>":  June 29, 2015 "..more nicks than previous razor."

p.    "<u>Tom</u>": August 26, 2015 "HEAD SHAVERS: DO NOT USE HARRY'S RAZORS. Their site contains a short understate warning about head shaving, mine and others are far more accurate, (and graphic). If you are squeamish, don't read the next paragraph, here is the executive summary: I used my Harry's razor one time to shave my head, result: one hour of first aid treatment and two large, painful very visible gouges in the side of my head that will take weeks to heal.

So you want the details? My experience was nearly identical to richfox's account above. Shaving my face went fine but when I moved to my head, on the upstroke from my ear to the top of my head (a move I have done many thousands of times) I felt the telltale hitch and knew I had cut myself. I have been shaving my head for nearly 15 years and cuts happen occasionally-more with some razors, less with others. I soldiered on as usual and then it happened again...same maneuver on the other side, same result.

But when I looked in the mirror to survey the damage what I saw was HORRIFIC! Blood literally pouring down both sides of my head....and when I looked in the razor I found two 1/4" x 3/4" strips of my head wedged behind the blades. Yeah, totally f'ing gross ...and Richwfox's reference to a "crime scene" is not hyperbole, there was blood everywhere: in the shower, on the bathmat, across the floor to the sink, and soaking a towel that I compressed with a belt around my head for an hour to get the bleeding to stop.

This was like no razor cut I have EVER experienced this was like taking a cheese grater to the side of my head. And yeah, it friggin' hurts!

Bottom line: will I never use that Harry's razor again? Never. Would I recommend them to anyone else?

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction
9

Answered in the first sentence."

q. <u>Joe</u>: April 1, 2015 "Jim, I suffered the exact same plight. They are awful on a bald head. I have cuts all over my head from these blades and in 15 years of shaving my head with those Mach razors never once had a cut on my head like the ones i got from these blades. Mach may be overpriced, but for my dollars I'll take it over having little pieces of sliced skin on my razor blades followed by a lot of blood!"

r. <u>Martin Pavlik</u>: December 16, 2015 "Head shaver here. Harry's razors also removed a dime size piece of my scalp when shaving. Blood everywhere...as other's mentioned, "like a crime scene." Terrible product."

s. <u>Cindy</u>: April 21, 2016: "I encouraged my husband to buy Harry's razors because of all the publicity referencing their quality and great price.

Twice, while shaving his head, he experienced exactly the same type of injury. I say injury because you cannot fault an experienced shaver who never had this type of mishap when they get such significant "scalping" from what is touted as a superior razor.

Two severe injuries later and weeks of going to work with badges on his otherwise bald head have made for one very dissatisfied customer and.........................."

t. <u>Z Monkey</u>: May 8, 2015: "I too have a large piece of scalp flayed, 2 spots, last time I shaved, using harry's razor and gel. I've been ok on my face but I am now a bit weary. Have heard nothing from their customer service.

u. <u>Randy</u>: August 2, 2016: Just happened to me!!!!! I have to enormous places where I was scalped by Harry's. I am pissed. I bled for 2 hours and needed to be in court. The base below the first blade is to flimsy and if it bends down you are losing a significant section of scalp. DON'T BUY THEM.

//
//

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction
10

38. **PissedCustomer.com:**

    a.  <u>Jacksonville, Florida,</u> January 13, 2016: "....had been using a Gillette fusion but decided to try Harry's because the cost of replacement blades is much less expensive but on the very first time using Harry's razor, which has a "false" pivot...only bends and dug into my scalp. ....been shaving for over 50 yrs so am not a novice...ended up with a nasty injury and have been ignored and lied to by the company for several days now. ...poor customer service. monetary loss $1500." [Picture Below]



    b.  <u>Austin, Texas,</u> February 17, 2015: "Do not use on your head! I have been shaving my head since 1966 and have never had this happen before.

About a year or so ago I started using Harry's thinking it was a quality product. Then last week this happened. I reached out to customer service with an email stating

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction

11

what had happened. I also sent pictures of the blade
(and the box it came in) that was used and the two
pictures below.

They proceeded to ask me to email pictures and asked
for information that was given in the original email.
I would have sworn that they had not even read the
email just responded to the complaint. But they did
offer to refund my money.

This is going to leave one nasty scar, that may be
there the rest of my life. Yes, that is a large piece
of scalp with hair still intact.....". Your blades are
known to be a tool of maiming compensate or I will
sue!" [Two pictures below and to the left]




c.  Unidentified: August 2, 2016, I have two HUGE gouges
    on my head from shaving with Harry's. I pulled a big flap
    of scalp out of the razor. These people should be flayed. I am
    so pissed. Guaranteed they know this happens!"

d.  Unidentified: Head Shaver here. Harry's razor removed
    a dime size piece of my scalp when shaving. Blood
    everywhere.... as others mentioned, "like a crime
    scene". Terrible product."

e.  Edmond, Okalahoma, September 20, 2016: I have two large
    scars and a couple smaller ones, I know it was the razor. I have
    been shaving for years and never had an injury until Harry's.

    They have done nothing in response. They offered a
    refund but I don't believe I ever received it and that
    is pidly in comparison to the scars I have, these scars
    are blatantly obvious on my head I have to live w/it.

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction
12

Harry's apparently did not thoroughly test on the razors on scalps. The should be held accountable since there have been so many complaints."

    f.   <u>Anonymous:</u> October 2, 2016: "I used Harry's blade to shave the head and followed exactly step by step process as on Harry's website. The result was horrifying . More than that it was the response from Harry's stating they are not responsible for any such incidents. Harry's website has a disclosure fine print that actually forces the buyer to "terms of purchase which take away the buyer's right to claim damages." [Picture below and to the left]



    g.   <u>Anonymous:</u>  June 1, 2016:  Your blades are known to be a tool of maiming compensate or I will sue! [Picture below and to the left]



**39.**   **<u>Sightjabber.com:</u>**

    a.   <u>Glenn W</u>.: November 17, 2015: " DO NOT attempt to shave your head with Harry's razor. Good enough for shaving your face. DO NOT attempt to shave your head with Harry's. Been shaving my head for about 13 years, tried Harry's razor, and two hours later, my gashes are still oozing...guess I got used to the flexibility of the Gillette Trackball razor... Forgot I had tried these before,  didn't work a couple of years ago, but the wife and daughters like them for female shaving... I'll pass these on as well, they'll get good use of them. For myself, I'll

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction

stick to the Trackball...my cranium is worth $4 per
blade."

<u>Harry's representatives response</u>: "We're so sorry about
that, Glenn. Glad to hear your wife and kids will get
get good use of the blades and hope you're all nice
and healed up now.

    b.  <u>Peter S.</u>:  June 8, 2016:  "The first Harry's razor I got
was fantastic. Best shaves other than a barbershop.
With reorders quality has fallen off the cliff's to the
point where I get this gaping flesh wounds in my
scalp. For some reason the razor buckles and cuts
into the side of my scalp. This has happened 4 times."

40.  **Razorpedia.com**:

    a.  <u>Dan Flowers</u>:  June 16, 2015:  Huge warning to folks
using harrys razors to shave your head. There is a space
between the bottom blade and plastic frame that will
literally peal your sign off like a carrot pealer. I have
gashed myself three times with these razors, the most
recent one took a swath as wide as the blade and about
an inch long off the back of my scalp.... I have the scars
to prove it."

    b.  <u>Tom:</u>  August 29, 2015:  "The very first time I shaved
my head with a Harry's razor it sliced a large and deep
patch of skin (I'm talking 1/4" x 3/4") completely off the
side of my head that bled heavily for an hour and will
take weeks to heal. I have been a head shaver for over 15
years and did nothing I haven't done thousands of times
before, however with a Harry's razor the results were
disastrous."

41.  **Allappleallday.com**

    a.  <u>Brett Livingston</u> February 12, 2016:  "I got the Harry's gift
package. The first time I used the Harry's blade I cut myself
do deeply on the back of my head that I needed butterfly
closures to the flap on skin onto my head. It was a horribly
nasty gash and I probably should have gone for sutures.

It was months before the wound was completely healed and
I had a big welt for nearly a year. I have a permanent scare.
I immediately went back to Gillette fusion. Interestingly
enough my son-in-law had the same type of injury with his

Harry's gift kit."

42.   **Harry's Inc., Facebook Page:**

    a.   <u>Leo Luciano</u>: date unknown:  "Purchased this product for my boyfriend and he did not like it at all he said His face and head got irritated and burning!

       <u>Harry's Representative Response</u>:  Really sorry to hear that he didn't like Harry's shave. Only asking because we've  found that it can actually take a few shaves to adjust to a new system (4-5). If he holds the razor at a different angle or changes the amount of pressure he applies while shaving, we think he'll find that the shave improves." Having said that, if he still finds that he is not getting the shave that he was hoping for, he can email us at help@ harrys.com and we'll be glad to take care of him."

       <u>Plaintiff</u>:  Did it cut his head?

       <u>Leo Luciano</u>-Yes!

    b.   <u>Thomas Rohr</u>:  December 8, 2016:  "Even though the **instructions** say you can use this razor for your head I would think twice before using. I've been shaving my my head daily for years and with the second blade new after the first swipe the second scalped me. First time a razor ever peaked my skin like this one.

            **[The Instructions are posted on page 16]**

//
//
//
//
//
//
//
//
//
//
//
//
//
//



//
//
//
//

**[Picture Of Thomas Rohr's injury posted on page 17.]**

//
//
//
//
//
//
//
//
//

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction

17

43. **Defendant's Ipad Application:**

Order # 6ESE12BE7354: December 6, 2016

"We'd love to get to know you better.

Do you shave your head?

___Yes, I Shave My Head

___No, I Don't Shave My Head"

44.   The websites investigated were also reviewed for head injury complaints for Schick, Gillette, Dollar Shave Club, Dorco, Personna, Defender, Tough Blade, American Cutting Edge, Beluga Shave, Bic , Merkor, Blade Buddy, Razorpit, Feather, Vulix, Dovo, Laser, Swissco, Classic Shaving and Easyraze. There were no reports of scalp injuries caused by these razors.

45.   Only a small fraction of people who sustained injuries from Defendant's razors likely go online and tell an embarrassing "bathroom experience". There are most likely hundreds if not thousands of Defendants customers that have been injured. It is very rare for the manufacturer of a defective product to place that product in the stream of commerce in the United States and in the State of California when that manufacturer is aware that its product will cause injuries to the public. The Defendant is a common criminal who along with its officers, employees, and accomplices perpetrated the crime of battery and other public offenses against the people of the State of California.

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT**

46.   Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein;

47.   Plaintiff entered into a contract with Defendants for the purchase of a razor;

48.   Plaintiff complied with all the obligations under the contract;

49.   Plaintiff has been deprived of the benefits of the agreement with Defendants;

50.   Defendants breached their agreement with Plaintiff when it sold Plaintiff a razor that was unfit to be used for its intended purpose;

51.   As a result of Defendants breach of contract Plaintiff has suffered damages;

52.   Defendant is liable to Plaintiff for damages.

**SECOND CLAIM FOR RELIEF**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

53.   Plaintiff realleges and incorporates by reference each and every allegation

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction
18

above as if fully set forth herein;

54.   Plaintiff entered into a contract with Defendant for the purchase of a razor;

55.   There is a covenant of good faith and fair dealing implied in every contract; this implied covenant requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement;

56.   Defendant breached their agreement with Plaintiff when it sold the Plaintiff a razor that injured the Plaintiff;

57.   Defendant had a duty to Plaintiff to disclose that the razor would cause injuries;

58.   The razor did in fact cause injuries to the Plaintiff;

59.   Defendants were at all times aware that the product was dangerous, and it was foreseeable that the Plaintiff would use it as intended;

60.   Defendant is liable to Plaintiff for damages.

### THIRD CLAIM FOR RELIEF
### STRICT LIABILITY

61.   Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

62.   Plaintiff entered into a contract with Defendant for the purchase of a razor;

63.   Defendants razor was defectively manufactured, defectively designed, and Defendant failed to provide a warning that the product was dangerous;

64.   The product left the Defendant's hands in a condition not reasonable contemplated by the Plaintiff, and is unreasonably dangerous for its intended use;

65.   The Plaintiff was injured by the product through no fault of his own;

66.   The defect was the sole factor that caused the injury sustained by the Plaintiff;

67.   The Defendants is liable to Plaintiff for damages.

### FOURTH CLAIM FOR RELIEF
### INTENTIONAL MISREPRESENTATION

68.   Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

69.   Plaintiff entered into a contract with Defendant for the purchase of a razor;

70.   The Defendant represented to the Plaintiff that the razor were suitable for its intended purpose;

71.   The Defendant's representation was false;

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction
19

72.   The Defendant knew that the representation was false when made, and made the representation recklessly, and without regard for its truth;

73.   That Defendant intended that Plaintiff rely on the representation;

74.   That Plaintiff reasonably relied on Defendant's representation;

75.   The Plaintiff was injured; and

76.   The Plaintiffs reliance on Defendant's representation was a substantial factor in causing Plaintiffs injuries;

77.   The Defendant is liable to Plaintiff for damages.

### FIFTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78.   Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

79.   Plaintiff entered into a contract with Defendant for the purchase of a razor;

80.   Plaintiff used the razor and suffered a scalp wound;

81.   Defendants conduct caused Plaintiff to suffer severe emotional distress;

82.   That Defendants conduct was outrageous;

83.   The Defendant intended to cause the Plaintiff emotional distress;

84.   The Defendants acted with reckless disregard of the probability Plaintiff would suffer emotional distress;

85.   The Plaintiff  suffered severe emotional distress;

86.   Defendants conduct was a substantial factor in causing Plaintiff  severe emotional distress;

87.   The Defendant is liable to the Plaintiff for damages.

### SIXTH CLAIM FOR RELIEF
### FRAUD

88.   Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

89.   Defendants made a false representation of fact that its razor was suitable for its intended purpose;

90.   Defendant knew at the time the representation was made that it was false;

91.   Defendant had the intent to defraud the Plaintiff;

92.   Plaintiff justifiably relied upon the misrepresentation;

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction

20

93.  Plaintiff suffered injuries resulting from that justifiable reliance;

94.  The Defendant is liable to the Plaintiff for damages.

### SEVENTH CLAIM FOR RELIEF
### CONCEALMENT

95.  Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

96.  Plaintiff was injured because the Defendant concealed information in their contract for the sale of a razor;

97.  The Defendant  intentionally failed to disclose that their razor would cause the Plaintiff head injuries;

98.  The Defendant intentionally failed to disclose an important fact that was known only to Defendant, and that Plaintiff could not have discovered;

99.  Plaintiff did not know of the concealed fact;

100.  Defendant intended to deceive Plaintiff by concealing the fact;

101.  The Plaintiff reasonably relied on Defendants deception;

102.  The Plaintiff was injured; and;

103.  Defendant's concealment caused the Plaintiff's injuries;

104.  The Defendant is liable to the Plaintiff for damages.

### EIGHTH CLAIM FOR RELIEF
### VIOLATION OF CALIFORNIA PENAL CODE SECTION 242 BATTERY

105.  Plaintiff realleges and incorporates by reference each and every allegations above as if fully set forth herein.

106.  Plaintiff entered into a contract with Defendant for the purchase of a razor;

107.  The Defendant sold Plaintiff a razor that Defendant knew would cause injury to Plaintiff;

108.  The Defendant caused the Plaintiff to be touched with the intent to harm;

109.   The Plaintiff did not consent to the touching;

110.  The Plaintiff was harmed  by Defendant's conduct;

111.   That a reasonable person in Plaintiff's situation would have been offended by the touching;

112.  The Defendant is liable to the Plaintiff for damages.

### NINTH CLAIM FOR RELIEF

**VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1750 et. seq. CALIFORNIA CONSUMER LEGAL REMEDIES ACT**

113.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

114.    This claim for relief is brought under California Civil Code Sections 1750 et. seq. Under section 1750 Plaintiffs are entitled to enjoin Defendants wrongful practices by reason of Defendants unlawful, unfair, and/or deceptive acts and practices.

115.    The California Consumer Legal Remedies Act, prohibits unfair methods of competition and unfair or deceptive acts or practices, undertaken by any person or entity in a transaction intended to result, or which results in the sale or goods or services.

116.    In particular, and more specifically, Defendants engaged in unfair, unlawful, fraudulent and deceptive business practices by selling Plaintiff a dangerous razor that was defective and unsuitable for the uses for which it was intended.

117.    Defendants acts present a continuing threat to members of the public of this State, in that Defendant continues to sell razors in violation of The Consumer Legal Remedies Act. Plaintiff has notified Defendant in writing, via certified mail of their violation and demanded Defendant rectify its violation of this Act.

118.    Plaintiff,  a "Senior Citizen" in accordance with Section 1780 (b) of the Civil Code is entitled to damages as provided therein.

119.    This Court is empowered to and should grant a preliminary and permanent injective relief against such acts and practices in the form of a cease and desist order.

**TENTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION ACT**
**BUSINESS AND PROFESSIONS CODE SECTION 17200 et. seq.**

120.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

121.    The California Unfair Competition Act defines unfair competition to include any "unfair", "unlawful" or "fraudulent" business act or practice. A fraudulent business practice is one in which the members of the public are likely to be deceived. The Act also provides for injunctive relief for violations.

122.    This cause of action is brought by Plaintiff and members of the general public pursuant to California Business and Professions section 17200 et seq.

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction

22

123.   Plaintiff is entitled to enjoin Defendants wrongful practices and to obtain restitution for the monies paid to Defendant by reason of Defendants unlawful, unfair, and deceptive acts and practices.

124.   As a direct and proximate result of the acts and practices alleged above Plaintiff has been injured. The Court is empowered to, and should order restitution to all persons from whom Defendants unfairly and unlawfully took money.

125.   Section 17203 of the California Business and Professions Code provides for injunctive relief against any person or entity engaging in unfair competition.

## ELEVENTH CLAIM FOR RELIEF
## VIOLATION OF SECTION 17500 et. seq. of THE CALIFORNIA BUSINESS AND PROFESSIONS CODE-FALSE ADVERTISING

126.   Plaintiff repeats and realleges the allegations contained above as if fully stated herein.

127.   Section 17500 of the California Business and Professions Code makes it illegal to offer any item for sale, including over the internet and make any statement concerning the sale of personal property that is untrue, misleading, and which is known or which by the exercise of reasonable care should be known to be untrue or misleading;

128.   The Defendant advertised on the Internet a razor for sale and the Plaintiff purchased the razor with the reasonable expectation that it would be suitable for the purpose for which it was intended;

129.   Defendant knew at all times that the razor would cause injury to the Plaintiff ;

130.   The Defendant's advertisement for the sale of the razor was untrue and misleading;

131.   The Defendant was aware at the time the advertising was false;

132.   The Defendant is liable to the Plaintiff for damages.

## TWELFTH CLAIM FOR RELIEF
## VIOLATION OF THE FEDERAL FAIR TRADE COMMISSION ACT

133.   Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

134.   The Federal Trade Commission Act is the primary statute of the Commission.

135.   Under this Act, as amended, the Commission is empowered among other things to:  (a) prevent unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce; (b) seek monetary redress and other relief for conduct injurious to consumers;  (c) prescribe rules defining with specificity acts or practices that are unfair or deceptive, and establish requirements designed to prevent such acts or practices;

136.    The Defendants violated the Fair Trade Commission Act by engaging in deceptive practices, false advertising and unfair competition a as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1. A declaration that the Defendants conduct alleged herein constitutes a breach of contract, breach of the implied warranty of good faith and fair dealing, strict products liability, intentional infliction of emotional distress, intentional misrepresentation, concealment, battery, violation of the California Consumer Legal Remedies Act, violation of California Unfair Competition Act and violation of California's False Advertising Act, Violation of the federal Fair Trade Commission Act.

2. An injunction enjoining, preliminarily and permanently that Defendants cease and desist their unlawful conduct alleged herein.

3. An order that the Defendants place a suitable warning on its product.

4. An award for Defendants to pay all economic damages suffered by the Plaintiff .

5. An award granting punitive damages to the Plaintiff .

6. An award to Plaintiff for the costs of this suit and reasonable attorneys fees, as provided by law.

7. An award of such other and further relief as the nature of the case may require, or as the Court deems just, equitable, and proper.

## JURY DEMAND

Plaintiffs demand a jury trial of all triable issues.


Dated:

By: _____
          Arthur Mogilefsky-Plaintiff

Mogilefsky v. Harry's Inc. Complaint for Damages and Injunction

CM-01

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|

ARTHUR MOGILEFSKY
878 Mesa Drive
Arroyo Grande, California 93420
email: mogel@charter.net
TELEPHONE NO: 805-904-6164      FAX NO: 805-904-6164
ATTORNEY FOR *(Name)*: Pro Se

**FILED**

JAN 27 2017

SAN LUIS OBISPO SUPERIOR COURT
BY _____

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
STREET ADDRESS: ~~1050 Monterey Street~~
MAILING ADDRESS:
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo

SUPERIOR COURT OF CA
County of San Luis Obispo
Courthouse Annex
1035 Palm St., Rm. 385
San Luis Obispo, CA 93408

CASE NAME:
ARTHUR MOGILEFSKY V HARRY'S INC.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 17CV0047  JUDGE  DEPT |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[✓] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel       e. [ ] Coordination with related actions pending in one or more co
      issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence       f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary    b. [✓] nonmonetary; declaratory or injunctive relief    c. [✓] punitiv

4. Number of causes of action *(specify):* 12

5. This case [ ] is [✓] is not    a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 20, 2016

ARTHUR MOGILEFSKY
_____
(TYPE OR PRINT NAME)          ▶          _____
                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may res in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3
Cal. Standards of Judicial Administration, std
www.courtinfo.ca

February 9, 2017


Harry's Inc.
Corporation Service Company
2711 Centerville RD Suite 400
Wilmington, DE 19808

                          Re: Mogilefsky v Harry's

Dear Defendant:

          <u>Demand for Preservation of Electronically Stored Information</u>

Plaintiffs demand that you preserve all documents, tangible things and
electronically stored information potentially relevant to the issues in this cause.
As used in this document, "you" and "your" refers to HARRY'S INC., and its
predecessors, successors, parents, subsidiaries, divisions or affiliates, and their
respective officers, directors, agents, attorneys, accountants, employees,
partners or other persons occupying similar positions or performing similar
functions. You should anticipate that much of the information subject to
disclosure or responsive to discovery in this matter is stored on your current
and former computer systems and other media and devices (including personal
digital assistants, voice-messaging systems, online repositories and cell
phones). Electronically stored information (hereinafter "ESI") should be
afforded the broadest possible definition and includes (by way of example and
not as an exclusive list) potentially relevant information electronically,
magnetically or optically stored as: • Digital communications (e.g., e-mail,
voice mail, instant messaging); • Word processed documents (e.g., Word or
WordPerfect documents and drafts); • Spreadsheets and tables (e.g., Excel or
Lotus 123 worksheets); • Accounting Application Data (e.g., QuickBooks,
Money, Peachtree data files); • Image and Facsimile Files;
(e.g., .PDF, .TIFF, .JPG, .GIF images); • Sound Recordings (e.g., .WAV
and .MP3 files); • Video and Animation (e.g., .AVI and .MOV files); •
Databases (e.g., Access, Oracle, SQL Server data, SAP); • Contact and
Relationship Management Data (e.g., Outlook, ACT!); • Calendar and Diary

          Arthur Mogilesky v Harry's Inc., Letter Of Preservation
                                  1

Application Data (e.g., Outlook PST, Yahoo, blog tools); • Online Access Data (e.g., Temporary Internet Files, History, Cookies); • Presentations (e.g., PowerPoint, Corel Presentations) • Network Access and Server Activity Logs; • Project Management Application Data; • Computer Aided Design/Drawing Files; and, • Back Up and Archival Files (e.g., Zip, .GHO) Craig Ball The Perfect Preservation Letter © 2006 – All Rights Reserved 14 ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI. The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/06), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiffs of their right to secure the evidence or the Court of its right to adjudicate the issue. Preservation Requires Immediate Intervention You must act immediately to preserve potentially relevant ESI including, without limitation, information with the earlier of a Created or Last Modified date on or after [DATE] through the date of this demand and concerning: 1. The events and causes of action described in [Plaintiffs' Complaint]; 2. ESI you may use to support claims or defenses in this case; 3. …. 4. …. Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence. Suspension of Routine Destruction You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation,

Arthur Mogilesky v Harry's Inc., Letter Of Preservation

2

operate to cause the loss of potentially relevant ESI. Examples of such features and operations include: • Purging the contents of e-mail repositories by age, capacity or other criteria; • Using data or media wiping, disposal, erasure or encryption utilities or devices; Craig Ball The Perfect Preservation Letter © 2006 – All Rights Reserved 15 • Overwriting, erasing, destroying or discarding back up media; • Re-assigning, re-imaging or disposing of systems, servers, devices or media; • Running antivirus or other programs effecting wholesale metadata alteration; • Releasing or purging online storage repositories; • Using metadata stripper utilities; • Disabling server or IM logging; and, • Executing drive or file defragmentation or compression programs. Guard Against Deletion You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It's simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

Furthermore, Defendant is prohibited from removing any data stored on its Facebook page or other social media page that relates to this matter.

Do to the criminal nature of the Defendant we anticipated that it will attempt to delete electronically stored data. That would be a bad idea.

Thank you for your anticipated cooperation.


Sincerely,


Arthur Mogilefsky
Attorney at Law

AM:ls

**SUPERIOR COURT OF SAN LUIS OBISPO COUNTY**
**San Luis Obispo Branch**, 1035 Palm Street, Rm 385, San Luis Obispo, CA 93408
**Paso Robles** Branch 901 Park Street, Paso Robles, CA 93446

| | |
|---|---|
| Arthur Mogilefsky vs. Harry's Inc | **CASE NUMBER** |
| | **17CV-0047** |
| | **Case Management Conference** |

# NOTICE OF ASSIGNMENT AND CASE MANAGEMENT CONFERENCE

This case is assigned to **Judge LaBarbera, Barry T.** for all purposes.

Plaintiff must serve the Summons and Complaint, a copy of this Notice; the Standing Case Management Order (located at http://slocourts.net/forms_filing) of the judge assigned for all purposes and must file proofs of service within 60 days after the Complaint is filed.

**Defendants shall file responsive pleadings with 30 days of service** unless the parties stipulate to an extension of not more than 15 days.

IT IS HEREBY ORDERED:

1. The parties must appear for a first Case Management Conference **on June 05, 2017, 9:00 AM, San Luis Obispo Department 2** THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE.  For information about telephone appearances call **COURTCALL** at (888)882-6878.

2. Parties are responsible for reviewing and following the Case Management Order of the assigned judge.  The orders are located at http://slocourts.net/forms_filing.

3. Each party must file and serve a Case Management Statement at least 15 days before the conference.

4. The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss suitability of the case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.

5. Trial will be set within the 11th or 12th month after the filing of the Complaint. Counsel must arrange their schedules, reserve dates with witnesses and schedule trial preparation with this in mind.  Continuances will be granted only on a clear showing of good cause.

6. All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's office.

7. Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules. **LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00 and 26.00.

## ALTERNATIVE DISPUTE RESOLUTION POLICY STATEMENT

### WAYS TO RESOLVE YOUR DISPUTE WITHOUT A TRIAL
Presented by the San Luis Obispo County Superior Court

The mission of your Superior Court is to resolve civil disputes fairly and efficiently.  It is the court's policy to encourage persons involved in a lawsuit to consider methods other than a trial to resolve their disputes.

Did you know that 95% of all cases filed in court do not go to trial?  Most cases are settled or decided in some other way.  In fact, methods of settling disputes that do not require a trial have become the first choice of most businesses, government agencies and unions.  Agreements to mediate or arbitrate disputes are now commonly found in contracts covering employment, medical care, banking and insurance.

Alternative Dispute Resolution is a catch-all term that refers to the ways other than a trial that can be used to resolve the dispute you brought to the courthouse.  These options are typically less formal than trial and many provide opportunities to reach an agreement through a problem-solving approach rather than the adversarial approach of a trial.  ADR can save time, reduce costs and increase your overall satisfaction with the outcome.

### THE ADVANTAGES OF ADR

**Reduce Legal Costs**: Nearly all cases are resolved without a trial.  If a settlement is likely anyway, wouldn't it be better to save attorneys fees, court costs and experts fees by settling early?  In a recent survey, two thirds said they saved money by using ADR.

**Reduce The Time Spent on the Dispute**: A dispute can usually be decided or settled much sooner by using ADR. It is almost always less expensive.

**Increase Control Over the Result**: Some methods of ADR allow the parties to fashion creative resolutions that are not available in a trial.  Other ADR methods permit the parties to entrust a decision about the dispute to an expert in a particular field instead of to a judge or a jury without the same experience or knowledge.  And in ADR, both the dispute and its resolution can remain confidential.

**Preserve Relationships**: ADR is generally a less adversarial and hostile forum for dispute resolution than a trial.  An experienced mediator or arbitrator can help the parties effectively communicate their needs and point of view to the other side.  This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction**: In ADR, the parties usually have a better chance to tell their side of the story than they do in trial.  This increases the likelihood the case will settle as well as the parties= overall satisfaction with the outcome.

**Improve Attorney-Client Relationships**:  Attorneys may benefit from ADR by being seen as problem-solvers instead of as aggressive advocates.  Quick, cost-effective results are likely to produce repeat and new business from clients and their friends and associates.

### WHAT ARE THE ADR OPTIONS?

#### MEDIATION

In mediation, an independent, neutral person called a mediator helps the parties reach a mutually acceptable resolution of their dispute.  The mediator does not decide the dispute but is trained to help the parties communicate so they can settle the dispute on terms they design themselves.
If mediation does not result in a settlement, the case is returned to court.  And if the case goes to trial, there are laws that protect the confidentiality of the things discussed during mediation.

**Advantages**:  Mediation leaves control of the outcome with the parties.  It may be a particularly effective tool when the

CVDC04
Rev 07/01/02
Mandatory

ALTERNATIVE DISPUTE RESOLUTION

SLO rule 9.11.4

www.slocourts.net



parties have a continuing relationship to consider such as persons who work together, are neighbors or are members of the same family. Mediation is also effective where emotions are blocking a resolution. An effective neutral mediator can hear the parties out and help them communicate with each other in an effective and non-destructive manner.

**Disadvantages**: Mediation may be ineffective if one of the parties will not cooperate or is unwilling to compromise. And it may not be a good choice if the history of the parties includes abuse or victimization. Mediation may not produce a satisfactory resolution of the dispute if one of the parties has a significant advantage in power or rank than cannot be neutralized by the mediator.

## ARBITRATION

In arbitration, an independent, neutral person called an arbitrator decides what the outcome of the dispute will be. Each side presents evidence supporting its case in a setting that is more informal than a trial. Rules of evidence are relaxed.

Arbitration may be either binding or non-binding. Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's award as final. Generally, there is no right to appeal an arbitrator's final decision. Non-binding arbitration means that the parties are free to request a trial by a judge or a jury if they are unwilling to accept the arbitrator's findings and award.

**Advantages**: Arbitration is informal and usually less expensive than a trial. If the dispute involves a particularly complex matter, the parties can select an arbitrator who has training or experience in the subject matter of the dispute. If the dispute is not complex, the parties may simply wish to avoid the expense of a trial

**Disadvantages**: Generally, there is no appeal from a arbitrator's finding or award even if it is not supported by the evidence or the law. If a party to a non-binding arbitration requests a trial, there may be penalties for failing to achieve a better result.

## NEUTRAL EVALUATION

In early neutral evaluation, the parties employ an expert in the subject matter of the dispute and ask him or her to give them an opinion about how the dispute ought to be resolved. The expert's opinion is not binding and the parties use it to negotiate a resolution of the dispute.

**Advantages**: Neutral evaluation can produce early, creative settlements. If the parties are willing to listen and to compromise, the opinion of an expert they mutually select can provide a solid foundation for a long-lasting agreement.

**Disadvantages**: An expert can be expensive. The parties usually agree that neither the expert nor his or her opinion can be used in a trial if they cannot agree.

## COURT-SUPERVISED SETTLEMENT CONFERENCE

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a court-supervised settlement conference officer. The settlement conference judge or officer does not make a decision that is binding upon the parties. The judge or settlement officer helps the parties evaluate the case and to make decisions about settlement.

**Advantages**: A mandatory settlement conference gives the parties an opportunity before trial to negotiate a settlement in light of what they learned investigating the case and through discovery. The opinion of a settlement judge about the most likely outcome may inspire the parties to reevaluate their positions.

**Disadvantages**: A mandatory settlement conference is usually late in the life of a litigated dispute. It comes only after time and money has been spent preparing for trial. The parties' positions may have been hardened by what they have been through and they may be less willing to compromise.

CVDC04
Rev 07/01/02
Mandatory

ALTERNATIVE DISPUTE RESOLUTION

SLO rule 9.11.4

www.slocourts.net

EXHIBIT B

From: "Art Mogilefsky"
To: "jack.sarno@harrys.com"
Cc:
Sent: 27-Feb-2017 20:51:55 +0000
Subject: Mogilefsky v Harry's Compromise and Release.

Hello Jack-the compromise and release is attached. The $20,000,000 that I will
receive are the estimated fees I would earn bringing the lawsuits that I am
foregoing, and adequately punish the firm for its illegal and despicable conduct.

I see your company as coming out relatively unscathed in the scheme of things.
The publicity from disseminating the current complaint alone, not to mention
bringing the various class actions, would
have a devastating affect on business and could conceivably result in bankruptcy .

The investors would pursue your guys in an endless stream of litigation for fraud,
unless they were advised of the product defect before putting up their money.

Customs and Border Enforcement would refuse the product entry into the United
States in their capacity
of denying entry of dangerous products.

It goes on and on.

I don't the details of your policy with Zurich but it seems like they are guilty of

insurance "bad faith", even if you have "dirty hands". You could conceivably recover your looses from them regardless of coverage or policy limits.

If you loose the Target account, I believe you have an action against Quinn Emanuel that would be covered by their professional negligence policy and probably be no big deal for them.

Please let me know within 10 days, if the compromise and release is acceptable to you. For my part, I would rather do the litigation. I am retired and it is hard to find things to keep busy and active. I guess, I also believe your guys deserve another chance. I am a retired police officer from the City of San Jose and really frown on any type of criminal activity. I hope they will fly right in the future.

Art Mogilefsky


--
Jack Sarno
HARRY'S
Mobile: 347-263-1035